## IN THE SUPERIOR COURT OF GUAM

JEFFREY S. NAULT,

   PLAINTIFF

   vs.

MERLYN B. NAULT,

   DEFENDANT.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DOMESTIC CASE NO: DM0223-15

**DECISION AND ORDER RE:
DEFENDANT'S MOTION TO ENFORCE
INTERLOCUTORY DECREE OF
DIVORCE**

### Introduction

This matter came before the Honorable Maria T. Cenzon on October 4, 2019, for a hearing on Defendant Merlyn B. Nault's ("Defendant") Motion to Enforce Interlocutory Decree of Divorce. Defendant is represented by Attorney Daniel S. Somerfleck. Plaintiff Jeffrey S. Nault ("Plaintiff") is represented by Attorney Vanessa Williams. Plaintiff filed an Opposition to the Motion on September 27, 2019. Defendant filed a response to the Opposition on October 3, 2019. During the hearing, the parties resolved some of the issues presented in the Motion. The Court took the remainder of the issues under advisement pursuant to CVR Rule 7.1(e)(6)(D) of the Local Rules of the Superior Court of Guam. The Court now issues this DECISION and ORDER **GRANTING** the Motion in part, and **DENYING** the Motion in part.

### Background

The two parties in this matter were granted a dissolution of their marriage in 2017. Final Decree of Divorce (Apr. 6, 2017). A stipulated interlocutory decree of divorce ("Decree") was issued by this Court on April 6, 2017 and outlined the distribution of the property owned by the parties. Stipulated Interlocutory Decree of Divorce (Apr. 6, 2017).

On July 31, 2019, Defendant filed the present Motion asking this Court to enforce certain provisions of the Decree. Mot to Enforce Interlocutory Decree of Divorce (July 31, 2019). Specifically, Defendant asserted that the Plaintiff did not fulfill the following three provisions:

- *Provision 4: That the Defendant is awarded the Toyota 4 Runner as her sole and separate property and be responsible for the debt thereon. (Remainder omitted)*
- *Provision 5: That the Defendant is awarded fifty percent (50%) of the Plaintiff's Military Retirement accumulated from the date of the parties marriage until the date of the parties separation and Plaintiff's Social Security Benefits as provided by law.*
- *Provision 7: That the Plaintiff shall provide to Defendant a lump sum payment of $20,000.00 and Defendant waives all interest in Plaintiff's Federal Retirement Benefits and Thrift Savings Account accumulated during the parties marriage.*

*Id.* at 2. Defendant asserted in her Motion that she has been attempting through family and friends to obtain the spare key for the Toyota in Provision 4, to no avail. *Id.* She also claimed that she has not received her portion of the Retirement mentioned in Provision 5, nor has she received the Twenty Thousand Dollar ($20,000.00) lump sum payment mentioned in Provision 7. *Id.* Thus, Defendant asked the Court to order that Plaintiff fill out a Qualified Domestic Relations Order ("QDRO") and effectuate payment of the lump sum amount. *Id.* at 3.

In Plaintiff's Opposition, Plaintiff responded to each claim arguing that pursuant to Guam law, settlement agreements are viewed by Courts under the eyes of contract law. Opp. to Mot. to Enforce Interlocutory Decree of Divorce at 2-5 (Sep. 27, 2019). Thus, in order to determine the parties' intent in the contract, the Court can only look at the four corners of the document. *Id.*

On Provision 4, Plaintiff disingenuously claims that, pursuant to the Decree, he is not required to turn over the keys to the Toyota, but only the car itself. *Id.* at 3. Plaintiff asserted that Defendant has the car in her possession, thus Plaintiff has complied with the Decree. *Id.*

On Provision 7, Plaintiff again argued that the Court must read the Decree in full in order to determine the intent of the parties. *Id.* at 4-5. Plaintiff asserted that the reasonable

interpretation is that the lump sum payment was not due at the issuance of the final Decree, but rather when Plaintiff himself gained access to his Federal Retirement Accounts. *Id.*

Finally, Plaintiff asserted that Defendant is not complying with the Decree. *Id.* at 5. Plaintiff claimed that Defendant has not returned specific property owned by Plaintiff that she was ordered to return, including personal tools and military memorabilia. *Id.* Plaintiff also claimed that Defendant has not removed his name from the title of two other vehicles, as she was ordered to per the Decree. *Id.*

At the hearing on the Motion, the Court and both parties outlined solutions to many of the outstanding issues. Minute Entry (Oct. 4, 2019). First, Defendant agreed to allow Plaintiff to sign over title of the two cars at issue immediately after the hearing. *Id.* Second, Plaintiff agreed to give the income information needed in order for Defendant to fill out a QDRO. *Id.* Defendant then agreed to submit the QDRO and serve it on the appropriate government agencies, taking care of the issue of Military Retirement benefits mentioned in Provision 5. *Id.* Third, Defendant agreed to make arrangements with Plaintiff so that Plaintiff could collect his personal belongings still held in Defendant's residence. *Id.* Finally, Defendant requested that the Court assist her in satisfying a legal name change, which the Court agreed to provided that Defendant file the appropriate documents. *Id.*

The remaining outstanding issues which the Court must address are the key to Defendant's car, and the Twenty Thousand Dollar lump sum payment in exchange for Defendant waiving her rights to Retirement Accounts. Defendant put on the record that it costs approximately Four Hundred Nine Dollars and Ninety-Seven Cents ($409.97) to replace the computerized key to the car. *Id.* Plaintiff stated that his past counsel was the last known party to have possession of the spare key, and that he would attempt to ask again whether his past counsel still the key. *Id.*

Regarding the lump sum payment, Defendant argued that a reasonable reading of the provision provided that the money be paid at the time the Decree went into effect. *Id.* Plaintiff disagreed, and pointed out that various other provisions in the Decree listed specific dates when

payment or action was to be effectuated. *Id.* Plaintiff also asserted that Defendant was the drafter of the final version of the Decree, which Defendant did not contest. *Id.* Plaintiff thus asserted that a reasonable reading of Provision 7 meant that the lump sum payment was not due until Plaintiff had access to his retirement funds. *Id.*

The Court took these remaining issues under advisement after the hearing.

## Discussion

Guam courts apply principles of contract interpretation to divorce decrees that incorporate settlement agreements. *Leon Guerrero*, 2000 Guam 28 ¶ 8. Guam follows the traditional approach of contract interpretation. *Wasson v. Berg*, 2007 Guam 16 ¶ 16. Under this approach, courts look to the four corners of a contractual agreement to determine "whether, as a matter of law, any ambiguity exists." *Id.* ¶ 11. If no ambiguity exists, courts will not consider extrinsic evidence in determining the intent of the contracting parties. *Id.* However, if the Court does find ambiguity, then extrinsic evidence can be used to determine the intent of the parties at the time of contract formation. In Guam, an ambiguity exists when a document on its face is capable of two different reasonable interpretations. *Torres v. Torres*, 2005 Guam 22 ¶ 13 (quoting *Bank of Guam v. Flores*, 2004 Guam 15 ¶ 14).

The threshold question for this Court in deciding on the Motion is whether or not there exists ambiguity in each contested provision of the Decree. If there is no ambiguity, then this Court will determine the intent of the parties based on the plain text of the provision. If this Court does find there is ambiguity, then the Court can consider extrinsic evidence in order to determine the intent of the parties when contracting the Decree.

The two outstanding issues in front of this Court are discussed below under this ambiguity analysis.

### A. Provision 4

Regarding the lost spare key, this Court finds no ambiguity in the decree provision. The relevant portion of the provision reads "(t)hat the Defendant is awarded the Toyota 4 Runner as her sole and separate property and be responsible for the debt thereon." It is clear that based on

the language of the provision, Plaintiff is required to turn over the car to Defendant upon the issuance of the final Decree. Thus, because no ambiguity exists, the question for this Court is whether, based on the plain language of the provision, the parties intended for the *keys* of the car to be turned over along with the car.

This Court finds reasonable that a plain reading of the provision shows that the parties intended the car, including both keys to the car, be turned over to Defendant. Plaintiff admitted that his past counsel has the spare key. This Court, finding no ambiguity, **<u>GRANTS</u>** Defendant's Motion on Provision 4. Plaintiff is ordered to turn over the spare key to the car. If Plaintiff cannot find the spare key, Plaintiff is ordered to pay the amount it would cost to replace and reprogram the spare key to the car.

### B. Provision 7

Regarding the lump sum payment, this Court finds that there is an ambiguity regarding date of payment. The relevant language reads "(t)hat the Plaintiff shall provide to Defendant a lump sum payment of $20,000.00 and Defendant waives all interest in Plaintiff's Federal Retirement Benefits and Thrift Savings Account accumulated during the parties marriage."

Both parties on the record claimed different interpretations of the same language of the provision. Defendant interpreted payment to be at the time of decree, while Plaintiff interpreted payment to be at the time of access to the relevant retirement funds. The Court finds both of these interpretations reasonable, thus finding ambiguity in the provision. The Court must discern the intent of the parties based on a reading of the provision and any relevant extrinsic evidence.

Both parties have different understandings of the relevant provision, so the parties' subjective understanding of the provision is irrelevant. Rather, the Court finds that when read as an individual provision within the entirety of the stipulated Decree, there is a reasonable interpretation of Provision 7. The Court finds persuasive that when Provision 7 is read in tandem with the other provisions in the Decree, it is one of the few provisions which does *not* have a specific date of effectuation. The agreement does not mandate that payment be due at the entry of the stipulated Decree, as other provisions do mandate. The Court further finds persuasive that

Defendant was the drafter of the final version of the Decree. Defendant included provisions that took effect at the time of entry of the Decree. However, Defendant specifically did not include that time frame in Provision 7. Thus, this Court does not find reasonable, based on a reading of the provision itself and the Decree in full, that the parties intended for payment of the lump sum to be at the time of entry of the Decree.

Rather, the only reference to any time frame in the provision is the mentioning of Plaintiff's Federal Retirement Benefits and Thrift Savings Account. The Court finds reasonable that the parties, based on a plain reading of the provision and the Decree, intended for the lump sum payment to be made to Defendant upon Defendant gaining access to the funds in these accounts. No other evidence points towards any other date of payment. The Court does not agree with Defendant's analysis of the provision's language, given the inclusion of the missing time frame in other Decree provisions. Therefore, the Court does not believe payment of the lump sum in lieu of an interest in the Retirement Accounts was due at the time of entry of Decree. Subsequently, the Court **DENIES** this portion of Defendant's Motion.

### Conclusion

Based on the reasons provided above, the Court hereby **GRANTS** Defendant's Motion regarding Provision 4, the key to the car. However, the Court **DENIES** Defendant's Motion regarding Provision 7, the payment of the lump sum in exchange for waiving interest in the Retirement Accounts.

No further hearings are scheduled in this matter.

SO ORDERED this **DEC 23 2019** _____.

**HONORABLE MARIA T. CENZON**
JUDGE, SUPERIOR COURT OF GUAM

CE_____ "A CC____ Y
I acknowledge that a copy of the original hereto was placed in the court box of:
Somerfleck;
V. Williams
Date: 12/23/19 Time: 1:45pm
_____ Superior Court of Gua _

*Nault v. Nault*; DM0223-15
D&O re: Defendant's Motion to Enforce Interlocutory Decree